# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0983V
UNPUBLISHED

| | |
|---|---|
| JEANNE M. MISKE,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: November 16, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Nicole Kathryn Nobbe*, Moore Heffernan, et al., LLP, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On July 9, 2019, Jeanne M. Miske filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine she received to her right shoulder on September 27, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

On November 12, 2020, the parties filed a joint motion for a fact ruling regarding which arm Petitioner received the relevant dose of flu vaccine. (ECF No 21). For the

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right shoulder.

## I. Relevant Procedural History

As noted, the matter was initiated in July 2019. At the initial status conference held on September 17, 2019, it was noted that the record of vaccination indicated that Petitioner received the flu vaccine in her left shoulder, not her right shoulder as she alleged in her petition. Petitioner's Exhibit ("Ex.") 2 at 7.[3] (ECF No. 10).

On October 13, 2020, Respondent filed a status report stating that he intended to defend the case. (ECF No. 19) However, Respondent also stated that the parties had conferred and were in the process of preparing a joint motion for a fact finding regarding the disputed vaccine situs issue. *Id.* The parties requested 30 days to file the joint motion and this request was granted. (ECF No. 20). The joint motion was filed on November 12, 2020. (ECF No. 21). The issue is now ripe for resolution.

## II. Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which

---

[3] The page numbers referenced throughout this motion will be the page numbers added by Petitioner's counsel at the bottom of exhibits, rather than the PDF or ECF filing page numbers which may be different due to the use of title pages.

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Finding of Fact

The following Finding of Fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I rely upon the following:

- On September 27, 2018, Petitioner received the flu vaccine. Ex. 2 at 7. The vaccine record reflects that the vaccine was administered in her left deltoid. *Id.* Petitioner claims, however, that the record in inaccurate and that the vaccine was received in her right shoulder. Ex. 1 at 1, ¶ 4.

- Petitioner recalls that the nurse approached her to inject her in the left shoulder, but prior to the injection, she asked if the vaccine could instead be administered in her right shoulder, as she is left-handed. Petitioner recalls that the nurse agreed

to do so, and that she subsequently received the vaccination in her right shoulder. Ex. 1 at 1, ¶ 5.Ex. 1 at 1, ¶ 4. That same day, Petitioner texted her friends that her right arm hurt and sent photos to them of her right arm. Ex. 1 at 2, at ¶ 7; Ex. 4; Ex. 5. That evening, Petitioner also showed her husband the location of the band aid on her right shoulder and told him that her right arm hurt. Ex. 1 at 2, ¶ 8.

- On October 6, 2018, Petitioner saw Jeffrey Elbers, M.D., complaining of right shoulder pain since her flu shot. Ex. 6 at 4. Dr. Elbers diagnosed Petitioner with upper right extremity pain. *Id.* at 5. He recommended to continue symptomatic treatment and to follow up if the pain continues. *Id.*

- On October 24, 2018, Petitioner was seen by Dr. Ashley Tekippe, MD, at a Sports Medicine and Orthopedic Clinic, presenting with right shoulder pain. She was assessed to have "acute pain of right shoulder," impingement syndrome, and subacromial bursitis. Ex. 12, at 8-11.

- On October 31, 2018, Petitioner started physical therapy for her right shoulder. Ex. 10 at 33-34. The physical therapist's assessment stated her findings were consistent with right subacromial bursitis due to a SRIVA. *Id.* at 34.

- On November 20, 2018, Petitioner saw Jack Bert, M.D., and orthopedic specialist, for ongoing right shoulder pain. Ex. 7 at 8. Dr. Bert ordered an MRI of Petitioner's right shoulder. *Id.*

- On November 20, 2018, Petitioner had an MRI of her right shoulder. Ex. 9 at 1-2. The MRI showed mild infraspinatus tendinopathy without a discrete tear. *Id.* at 2.

- Petitioner has continued to treat for right shoulder pain with follow up appointments with Dr. Bert. Ex. 7 at 5, 3; Ex. 13 at 1, Ex. 17 at 11-15. She also saw a rheumatologist, Joseph Bert, M.D., for her right shoulder pain. Ex. 14 at 7-10.

Based on the above medical record information, the preponderance of the evidence supports a finding that Petitioner's September 27, 2018 flu vaccine was administered into her right deltoid, as she has alleged. The record of Petitioner's October 6, 2018 visit to Dr. Elbers for right shoulder pain, noting that her flu shot was given in her right deltoid (Ex. 6 at 4), is particularly persuasive. This record is from only nine days after vaccination, and is the most contemporaneous medical record other than the vaccine administration record itself. Petitioner also photographed her right shoulder the same day as the vaccination, submitting text messages to her friend acknowledging her right shoulder pain and demonstrating the location of the band-aid placed on her right shoulder after vaccination.  Exs. 3-5. These text messages and photographs are time-stamped 2:15PM on September 27, 2018 - the afternoon of the date of vaccination. *Id.*

I acknowledge that the vaccine administration record *itself* memorializes administration of the flu vaccine in Petitioner's left deltoid. Ex. 6 at 4. However, all other medical records support a finding that the vaccine was actually administered in

Petitioner's right arm. And these records are supplemented by persuasive additional evidence bearing on situs.

Accordingly, preponderant evidence establishes that the vaccination alleged as causal in this case was more likely than not administered to Petitioner in the right deltoid on September 27, 2018. The parties' joint motion for a finding of fact on this issue is granted.

### V.	Scheduling Order

**Respondent shall file, by no later than <u>Friday, December 18, 2020</u>**, a status report concerning how he intends to proceed, or his unfiled Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master